OPINION
This matter presents a timely appeal from a judgment rendered by the Jefferson County Common Pleas Court, affirming the decision of the Civil Service Commission, terminating plaintiff-appellant, David A. Guy, Sr., from his position as a police officer for defendant-appellee, City of Steubenville, on the grounds of neglect of duty.
On September 3, 1997, pursuant to an action filed with the United States District Court for the Southern District of Ohio, Eastern Division, appellee entered into a Consent Decree ("Decree") with the United States of America. Item 66(b) of the Decree states:
 "The City shall identify for review by senior supervisors, all officers with three or more complaints of misconduct or other IA [Internal Affairs] referrals in three years, whether or not the disposition of the investigation was `sustained'. Such review shall result, where appropriate, in supervisory meetings with the officer, retraining, counseling, assignment to a FTO, transfer, or reassignment. The City's supervisory response shall address the types of misconduct alleged."
On May 7, 1998, Chief Jerry McCartney issued a general order advising appellant that three complaints had been registered against him with Internal Affairs. As a result, appellant was ordered to attend mandatory counseling. According to appellee, the purpose of such counseling was to receive an evaluation and recommendation from the counselor so that senior supervisors of the Steubenville Police Department could attempt to enhance appellant's job performance. (Tr. 41).
Appellant attended counseling on June 5, 1998, at Trinity Medical Center West with counselor, Louis Scott ("Scott"). Upon completion of the one hour session, Scott discussed confidentiality issues with appellant and informed him that, due to the mandatory nature of his counseling, there was an expectation that Scott would provide information regarding the session to appellant's superiors. (Tr. 76). With this in mind, appellant executed a release authorizing Scott to report his attendance at the session, and nothing more. (Tr. 77).
Pursuant to Item 70 of the Decree:
 "The City shall maintain records documenting all mandatory counseling of officers. At a minimum, these records shall reflect the name of the officer, the reasons for the referral (including any IA file number or other related cross references), the general subject matter of the mandatory counseling, and whether the mandatory counseling sessions were attended."
On June 24, 1998, Scott issued his assessment and recommendation, stating that appellant attended the session and that he was unable to identify any circumstances which indicated that appellant was at any risk to himself or others.
On July 15, 1998, appellee, by and through its agent, Gary J. DuFour, City Manager, delivered a pre-termination letter to appellant informing him that charges were pending against him for alleged neglect of duty. Said charges revolved around appellant's refusal to authorize the release of specific information gathered during his counseling session as required by the Decree.
A pre-termination conference was held on July 22, 1998. At the conference, appellant informed Mr. DuFour that he would release the information that appellee had requested. However, on August 12, 1998, a termination letter was issued to appellant outlining appellee's rationale in deciding to terminate his employment. Appellant appealed such decision to the Civil Service Commission.
A hearing was thereafter conducted on December 4, 1998, before the Civil Service Commission for the City of Steubenville. Following said hearing, the Civil Service Commission ruled in appellee's favor, upholding appellant's termination on neglect of duty grounds.
Upon appellant's timely filing a notice of appeal to the trial court, both parties submitted briefs. On February 17, 1999, the trial court issued its decision affirming the Civil Service Commission's prior ruling. Appeal to this court followed.
Appellant sets forth three assignments of error on appeal.
Appellant's first assignment of error alleges:
 "THE TRIAL COURT ERRED IN FINDING THAT APPELLANT ENGAGED IN A PATTERN OF INSUBORDINATION."
In its opinion, dated February 17, 1999, the trial court found it necessary to mention that the case at bar marked the third appeal that it had heard from decisions of the Civil Service Commission with respect to appellant. Regarding the prior encounters, the trial court stated:
 "* * * The last appeal by Appellant also involved a dispute with respect to the Consent Decree entered into by the City of Steubenville and the United States Department of Justice. In the former case as well as this case, Appellant waited until the last possible minute to attempt compliance with Orders of the City. * * *
"* * *
 "The Court is of the opinion that the City is able to look at the past record of Appellant with respect to disciplinary matters and litigation and take this all into consideration with respect to determining the course of action to be utilized in this or any other case. The Court finds the City's actions in this case to have been reasonable and proper."
Appellant argues that the trial court erred in finding that he engaged in a pattern of insubordination based solely upon an alleged refusal to sign the Decree.
In Arcuragi v. Miami Univ. (1995), 103 Ohio App.3d 455, 459, the court held that "prior misconduct was clearly material in determining the appropriate punishment for the most recent incidents of failure of good behavior."
Appellant concedes that consideration of past conduct is proper in determining appropriate disciplinary action. However, appellant states that the trial court considered only one instance of conduct from appellant's past, thus, this court must accept that finding of fact and may not adopt its own finding of fact based upon its investigation and interpretation of the transcript. Therefore, appellant maintains that the issue of past conduct may be used in determining disciplinary action, but may not be used to determine whether he violated the Decree.
"In administrative appeals of public employee disciplinary actions, a court of appeals may reverse a decision of the common pleas court only upon a showing that the court abused its discretion." Arcuragi, supra at 459, citing Kennedy v. Marion Corr. Inst. (1994), 69 Ohio St.3d 20,21-22. Such standard "implies a decision that is without a reasonable basis and is clearly wrong." Scandanavian Health Spa, Inc. v. Ohio Civ.Rights Comm. (1990), 64 Ohio App.3d 480, 488.
Initially, appellant's assertion that the trial court rendered its decision based merely upon one instance of past conduct is a blatant attempt to mislead this court. Though the trial court specifically mentioned "the last appeal by Appellant," it clearly acknowledged that the case at bar marked its third opportunity to preside over an appeal "from decisions of the Civil Service Commission with respect to Appellant." Additionally, to support his position that this court must accept the trial court's findings of fact, appellant relies on the principle that "[a]n appellate court should not substitute its judgment for that of the trial court where some competent and credible evidence supports the trial court's factual findings." State ex rel. Donah v.Windham Exempted Village School (1994), 69 Ohio St.3d 114, 118; citingWisintainer v. Elcen Power Strut Co. (1993), 67 Ohio St.3d 352, 355. However, appellant does not provide any "competent and credible evidence" to justify his argument.
It is also apparent from the trial court's opinion that past conduct was not considered in determining whether appellant violated the Decree. Rather, the trial court distinctly separated the issues into whether a violation of the Decree had occurred and whether, in lieu of such violation, termination was appropriate under the circumstances and in consideration of past conduct.Appellant's first assignment of error is found to be without merit.
Appellant's second assignment of error alleges:
 "THE TRIAL COURT ERRED IN FINDING THAT THE APPELLANT WILLFULLY REFUSED TO RELEASE ALL MEDICAL INFORMATION TO THE CITY OF STEUBENVILLE, THEREBY CONSTITUTING A NEGLECT OF DUTY."
Appellant contends that he did not receive a "specific directive" from appellee, which led him to believe that he would enjoy confidentiality in his counseling sessions. Appellant also asserts that the trial court erred in relying on Item 81 of the Consent Decree in determining that he was required to release all the information corollary to his mandatory counseling sessions.
Item 81 of the Decree provides:
 "The City shall contract for or provide an employee assistance program (`EAP'). This program shall at a minimum provide counseling and stress management services to officers. The program shall be staffed by sufficient licensed and certified counselors who are trained and experienced in addressing psychological and emotional problems common to police officers. The City shall publicize the availability of these services to all officers. Except when the City imposes mandatory counseling as a supervisory tool, officers shall be free to attend counseling confidentially, and without any adverse actions taken against them. The City shall refer officers to EAP counseling where the City believes an officer's job performance may benefit from EAP services."
Appellee maintains that not only did appellant receive adequate notice that a full release of information was expected, but appellant signed the Decree without contacting the law director to inquire regarding any misunderstandings he may have had. (Tr. 10). Therefore, appellee insists that appellant had a duty to fully understand and obey the dictates of the Decree, and if he did not, he should have contacted the law director to procure an explanation.
The Consent Decree does not specify with exacting detail what information is expected to be revealed by an officer following mandatory counseling. It appears that merely providing confirmation that the session was attended does not satisfy the mandates of the Decree. However, it remains questionable whether appellant was afforded sufficient notice that he was required to disclose more than his mere attendance at the counseling session. In order to charge appellant with notice that the Decree required a full release, the Decree must be clear in its expression and not subject to various interpretations by those who may be affected by it. The testimony elicited in the case at bar does not support the conclusion that the Decree was clear.
Captain Mark Sweeney, who recommended appellant for counseling, testified, upon inquiry, as follows:
 "Q If I remember correctly, you stated * * * that it's your understanding that the employee that was ordered to mandatory counseling was not required to make a full disclosure; a partial disclosure, you stated?
"A Well, according to this, the general subject matter.
"Q And how do you define general subject matter?
 "A I interpret that as what the doctor feels important to relay to the City. This section [70] to me is open to interpretation, and that's my interpretation." (Tr. 66).
On direct examination, Scott testified that he had discussed the mandatory nature of his counseling session with appellant and explained to him that there was an expectation that he provide information to appellant's superiors. (Tr. 76). On cross-examination by appellant's counsel, the following exchange took place with Scott:
 "Q Did Captain Sweeney inform you that David Guy would be expected to sign a release form and disclose everything that went on in your session with him?
 "A No. At that time the understanding was that the evaluation and the release of information would involve a recommendation.
"* * *
 "A Yes, a recommendation on my part as far as the need for any additional training or additional counseling in order to address the issue of dealing with individuals." (Tr. 78-79).
Further, Scott explained that under the Revised Code and certain ethical standards applicable to counselors, he believed that unless an exception existed under law or a release of information was executed, his client was to enjoy confidentiality. (Tr. 81). Since Scott was unable to discover any circumstances in appellant's behavior which would require disclosure, and appellant only authorized the release of his attendance, Scott kept the additional information confidential. (Tr. 82-84).
In the midst of "side-stepping" a direct question on cross-examination regarding notice of the release requirements, City Manager, Gary DuFour, testified:
 "A * * *. And I have to emphasize here that all of the affected persons signed off as having read and understood this and had the opportunity to question it or proceed in questioning or further discussion with the law director of the City. So if it were a question — and it did indeed embrace 40 some officers. If it was, it should have come forward in their reading in an attempt to understand." (Tr. 103-104).
However, this position is not supported by the language of the Decree. Item 93 of the Decree, provides:
 "The City shall immediately provide copies of, and explain the terms of this Decree to all current and future officers and employees, and all City officials with oversight or responsibility for SPD operations, in order to ensure that they understand the requirements of this Decree and the necessity for strict compliance. All such individuals shall sign a statement indicating that they have read and understand this Decree and acknowledge receiving an individual copy of the Decree."
It is a well-settled principle of law that the use of the word "shall" in a statute or contract connotes a mandatory obligation. Accordingly, appellee was required by Item 93 to explain the terms of the Decree to all those employees who were affected by it. Merely providing the employees with a copy of the Decree, instructing them to read it and then sign it does not satisfy the mandate of the Decree.
Appellee's claim that appellant had the opportunity to contact the law director if he had any questions does not rescue it in this instance. Appellee had an affirmative duty to explain the provisions of the Decree to the employees of the City "in order to ensure that they understand" what would be required of them in the event they needed to comply with those terms. By failing to fulfill its duty and allowing the employees to form their own independent interpretations of the Decree provisions, appellee must suffer the consequences of its own "neglect of duty."
Appellant read the Decree and, from his interpretation, confidently believed that mandatory counseling required he disclose only the fact that he attended the session as ordered. By failing to provide appellant or his fellow employees with notice of the terms and conditions, appellee breached their mandatory duty under Item 93 and, thus, cannot charge appellant with a neglect of duty. Gary DuFour's testimony on cross-examination confirms this conclusion, as follows:
 "Q Would you agree that an employee must first have notice of a particular duty, particular order before he can be charged with or found guilty of neglecting that duty?
"A Yes, the employee should know that, yes." (Tr. 105).
Appellant's second assignment of error is found to be with merit.
Appellant's third assignment of error alleges:
 "THE TRIAL COURT ERRED IN FINDING THAT THE CONSENT DECREE'S REQUIREMENT TO RELEASE ALL MEDICAL INFORMATION WAS IMPLICIT."
Appellant's argument relies solely upon the United States Supreme Court's holding in Firefighters v. Stotts (1984), 467 U.S. 561, wherein the Court reversed the trial court's interpretation of a consent decree intended "to remedy the hiring and promotion practices `of the * * * [Memphis Fire] Department with respect to the employment of blacks'."Stotts, supra at 565. In ruling that the trial court's interpretation of the consent decree amounted to an abuse of discretion, the Court stated that "the `scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it' * * *." Stotts, supra at 574, citing United Statesv. Armour Co. (1971), 402 U.S. 673, 681-82.
In the case at bar, Items 66b, 70, and 81 of the Decree attempt to address the parties' obligations. The trial court merely construed the Decree and enforced it in accordance with such construction. In reaching its decision, the trial court considered the relevant provisions of the Decree in conjunction with the intent of the parties in creating those provisions. As such, the trial court acted within the confines contemplated by the United States Supreme Court in Stotts and did not abuse its discretion in finding that the Decree's requirement to release all medical information was implicit.
Appellant's third assignment of error is found to be without merit.
The judgment of the trial court is affirmed in part, reversed in part and remanded for further proceedings in accordance with law and consistent with this opinion.
Donofrio, J., concurs, Waite, J., dissents. See dissenting opinion.